EASTERN DIS.
*June,* 1834.

THOMAS ET ALS
*vs.*
BREEDLOVE
ET ALS.

THOMAS ET ALS. *vs.* BREEDLOVE ET ALS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

6   573
f123  1013

Where notes are put into the hands of a surety to indemnify him against loss on payment of a surety debt, if it is shown that the obligors in said notes were insolvent or became so very soon after, the failure to collect or to pursue them is not imputable to the holder.

A citation or something equivalent in law is necessary to the validity of every judgment.

A partnership claim put on the bilan is not notice to an individual partner whose claim is omitted, and he is not a party to, or bound by the proceedings.

A creditor who is not put on the bilan for his individual claim and cited to attend the *concurso* of creditors, is not bound by their proceedings, even if he is placed on the tableau of distribution, but declines receiving dividends.

The proceedings of a debtor against his creditors are *res inter alios acta* as to any one who is not on the bilan, and whose claim is not mentioned therein.

The plaintiff's claim from the defendants J. W. Breedlove and W. L. Robeson, a debt of six thousand and three dollars with interest, as due the succession of the late Joseph Thomas. In 1827 Thomas became the surety in an appeal bond for the then commercial firm of Bedford, Breedlove and Robeson, who were appellants from a judgment obtained against them by Aikin & Gratz for four thousand seven hundred and thirty-two dollars with ten per cent. interest thereon until paid. This judgment was affirmed by the Supreme Court in March or April, 1827. While the appeal was pending, the firm of Bedford, Breedlove & Robeson failed and made a cession of their property to their creditors. Aikin & Gratz instituted suit against Thomas on the appeal bond, and recovered from him as surety the amount of their

EASTERN DIS.
June, 1834.

THOMAS ET ALS
vs.
BREEDLOVE
ET ALS.

judgment against Bedford, Breedlove & Robeson, amounting to six thousand and three dollars including interest and costs.

The petitioners being the wife and children of Joseph Thomas, who died the 19th April, 1832, claim this sum for his succession. They pray judgment therefor against the defendants.

The answer admits the suretyship of Thomas, the appeal and affirmance of the judgment, but denies the other allegations, and avers that they are not responsible, because at the time of signing the appeal bond, the firm of Bedford, Breedlove & Robeson transferred to Thomas as collateral security, and as an indemnity against his suretyship four promissory notes drawn by A. W. Breedlove & Co., and endorsed by Breedlove & Greenleaf, a firm at Port Gibson, in Mississippi, amounting to six thousand dollars payable at short periods from January 23, 1827. That since the appeal bond was executed the said firm failed and made a surrender of all their property to their creditors, which was accepted, syndics appointed, and the insolvents discharged according to law; that pending the *concurso* Thomas became a party thereto, was put on the tableau of distribution, and was entitled to claim his dividend.

It was proved on the trial that the notes given to Thomas as collateral security were never paid, and that in the year 1827, when the notes became due, both the drawers and endorsers of them were in bad credit, but the payment of some notes on them were secured by the vigilance of an attorney residing at Port Gibson. That in 1828, the parties to said notes ceased to pay their debts and were reputed insolvent. Judgment was obtained against Thomas on the appeal bond the 17th June 1827, which he paid by two instalments in June 1827 and February 1829.

The evidence showed that Bedford, Breedlove & Robeson, made a cession of their property in March 1827, and that no mention of the surety debt paid by Thomas was made in the bilan; but that *Thomas* and Kernion were placed thereon for a debt of two hundred and seventy-four dollars, appeared

at the meeting of creditors, voted for syndics and a discharge of the debtors.    Neither Aikin and Gratz nor Thomas were placed on the bilan in relation to this debt.    The syndics filed a tableau of distribution in 1831 on which Thomas was placed as a creditor for the sum of five thousand eight hundred and fifty-three dollars, and a dividend of fifteen per cent. declared: and on another tableau filed in 1833 for four thousand nine hundred and seventy-five dollars, being the same debt with the first dividend off, with another dividend of fifteen per cent-    The usual notices were given previous to homologating the tableaus; and the creditors also notified to call and receive their dividends, but no one appeared for or on behalf of Thomas.    He never received any dividend.

EASTERN DIS.
*June*, 1834.

THOMAS ET ALS
*vs.*
BREEDLOVE
ET ALS.

The district court considered the makers of the notes deposited as collateral security as insolvent when the notes became due, and that Thomas was not liable on failure to collect them.    But he considered the defendants liberated by the proceedings and their discharge under the insolvent laws, from the payment of this debt, and gave judgment dismissing the plaintiffs' petition from which an appeal was taken.

*Maybin* and *Strawbridge*, for the plaintiffs and appellants.

*McCaleb* and *Gray*, for the appellees.

MATHEWS, J., delivered the opinion of the court.

In this case the plaintiff sues as executrix of the last will and testament of her late husband Joseph Thomas, as tutrix of her minor children and as partner in the matrimonial acquets and gains, to recover debts alleged to be owing by the defendants to the succession of the deceased Joseph Thomas. Judgment was rendered in favor of the defendants in the court below, from which the plaintiff appealed.

The evidence of the cause shows that Thomas in his life time became surety on an appeal bond for the defendants or for a commercial firm composed of one Bedford and them.

EASTERN DIS.
June, 1834.

THOMAS ET ALS
vs.
BREEDLOVE
ET ALS.

This bond was made in favor of Aikin and Gratz, who had obtained a judgment against the house of Bedford, Breedlove and Robeson in December 1826, from which an appeal was taken by the latter and the judgment of the District Court was finally affirmed. The surety was pursued on the bond and paid to the appellees in that suit the amount of their judgment and costs, and also the amount of costs incurred in defending the suit against him on the bond, &c. This payment seems to have been made by instalments in 1827 and 1828, and amounted to the sum of six thousand one hundred and ninety-nine dollars and forty-six cents.

Previous to the payment made by the surety, viz.: in the month of March 1827, Bedford, Breedlove and Robeson ceded their property for the benefit of their creditors, &c. and at the time of signing the appeal bond they placed in the hands of the surety certain promissory notes, (as collateral security) drawn and endorsed by certain commercial firms in the state of Mississippi. At the meeting of creditors called on the failure of Bedford, Breedlove and Robeson, Thomas was not put on the bilan as a creditor on account of the debt now claimed by his representatives, nor was he cited to appear in relation to this claim, which was then only contingent. He was however afterwards placed on the tableaus of distribution by the syndics without his interference, and always declined to take any dividend of the insolvents estate.

On these facts the defendants have assumed two principal grounds of defence. 1st. That the surety was so negligent in endeavoring to recover on the notes which were placed in his possession for collateral security, as to lose the sums therein promised, an amount more than sufficient to indemnify him for his responsibility incurred by the bond. The loss thus incurred, the defendants allege ought to be borne by the surety and they freed from the obligation to refund, &c.

The second ground of defence assumed is that the cession of property made by Bedford, Breedlove and Robeson, and acceptance by their creditors has relieved them from all absolute obligations to pay any debts which existed at that time, whether certain, conditional or contingent.

As to the first means of defence, it was in our opinion pro-properly repudiated by the court below. The testimony shows pretty clearly that the obligors on the notes, (if not at the precise time when they became due) were very soon afterwards insolvent, consequently no negligence was imputable to the holder in not pursuing them.

The questions involved in the second may de termed legal and are not free from difficulty which too often occurs in cases of insolvency, notwithstanding the positive legislation on this subject, and the numerous commentators of Spanish writers in relation to the *concurso de acreedores*. The most important if not the sole question which arises in the present case is, whether the plaintiff as representing the succession of her husband is bound by the proceedings and judgment of the *concurso* formed at the instance of Bedford, Breedlove and Robeson, so as to bar the action now brought?

We lay it down as a first principle in our jurisprudence that citation to a defendant or something which the law prescribes as an equivalent, is necessary to the validity of any judgment. By express statutory provisions of the state, citation to the creditors in a *concurso* is required. In the 8th section of the act of 1817 which refers for the manner of calling creditors together to the *art.* 4 *tit.* 16 *book* 3 of the *Old Code* which relates to respites; but which was adopted by the act of 1817 in cases of cession of goods. This article of the Code requires that creditors residing within the parish where the meeting may be called, should be summoned to attend by process issued from the court holding cognizance of the *concurso.* Thomas in whose right the debt is claimed from the defendants was not placed on the bilan of the debtors as a creditor in his individual capacity, although he was there placed as joint creditor with another person under a partnership claim for a small amount and voted on this claim for syndics, &c. He was not cited according to law being a resident of the parish where the *concurso* was pending. Under these circumstances we are unable to perceive any good reasons why he or his representatives should be concluded by the proceedings and judgment in that case.

*Margin notes:*

EASTERN DIS.
*June*, 1834.

THOMAS ET ALS
*vs.*
BREEDLOVE
ET ALS.

When notes are put into the hands of a surety to indemnify him against loss on payment of a surety debt, if it is shown that the obligors in said notes were insolvent or so verysoon afterwards, the failure to collect or to pursue them is not imputable to the holder.

A citation or something equivalent in law is necessary to the validity of every judgment.

73

EASTERN DIS.
June, 1834.

THOMAS ET ALS
vs.

BREEDLOVE
ET ALS.

The knowledge which he had of the surrender of property in consequence of the partnership credit which belonged to him and another inspector of tobacco, certainly did not make him a party in his individual capacity. Not having been placed on the bilan as a creditor in his own separate right and not having been summoned to the meeting by service of citation in relation to the debt now claimed by his representatives, we consider that he ought not to be viewed in the light of a party to the *concurso*, and consequently that the proclamations and public advertisements in relation thereto can legally, in no manner affect the interests of the plaintiffs in present action. At the time of that proceeding he was only a contingent creditor. If it be admitted in pursuance of the doctrine established in the works of *Salgado* and *Febrero* that he had a right to cause himself to be placed on the bilan, it could have been only done for conservative purposes being a creditor merely contingent. This right of demanding a place in a *concurso*, by contingent creditors appears to us to be a privilege decreed to persons in that situation which may be waived by them without affecting their credits.

As Thomas was not placed on the bilan of the defendants nor cited to the meeting of creditors, the circumstance of afterwards giving him a place on the tableau of distributions not only without his solicitation but even contrary to his will (as appears by the constant refusal to partake in the dividends,) does not constitute him legally a party to the proceedings carried on by the insolvent's against their creditors, so as to gain the judgment in that case the force of the thing adjudged, (*rei judicatæ*) against the creditor or those who now claim in his right.

The case cited from 7 *Martin*, *N. S.* 564, is not similar to the present. The plaintiffs had been placed on the bilan and were cited as creditors. They claimed as endorsees and the note on which their claim was grounded had been placed on the schedule in the name of the payees and they suffered judgment to be pronounced without opposition, which declared the payees to be bona fide holders and real creditors. The case now under consideration is not, (in our opinion)

*A partnership claim put on the bilan is not notice to an individual partner whose claim is omitted, and he is not a party to or bound by the proceedings.*

*A creditor who is not put on the bilan for his individual claim and cited to attend the concurso of creditors is not bound by their proceedings, even, if he is placed on the tableau of distribution but declines receiving dividends.*

EASTERN DIS.
*June*, 1834.

distinguishable, in any important feature from that of *Bainbridge* vs. *Clay*, 3 *N. S.* 262. Before the commencement of this suit the proceedings in the *concurso* of the creditors of the defendants had been homologated and dividends declared. The principles established in the case of *Taylor* vs. *Hollander*, 4 *Martin N. S.* 535, and that of the *Franklin Bank* vs. *Nolte et al.*, are therefore not applicable to the matters now in contest. The cause must be decided in conformity with the doctrine established by the opinion and judgment rendered in the case of *Bainbridge* vs. *Clay.*

The proceedings of a debtor against his creditors are *res inter alios acta* as to any one who is not on the bilan and whose claim is not mentioned therein.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, reversed and annulled: And it is further ordered, adjudged and decreed, that the plaintiffs and appellants do recover from the defendants and appellees the sum of six thousand and three dollars principal, and one hundred and ninety-six dollars cost with interest on two thousand nine hundred and thirteen dollars sixty cents, at the rate of six per cent per annum from the 21st June 1827, and like interest on three thousand and eighty-nine dollars and ninety-six cents, from the 24th of June 1828 until paid with costs in both courts.